# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>ANNE MARIE WOLD,<br><br>　　　　　Debtor. | Case No. A12-00621-GS<br>Chapter 13 |

## MEMORANDUM ON MOTION FOR AWARD OF ATTORNEY'S FEES

Secured creditor Robert Bradley has filed a *Motion for Award of Attorney's Fees* (hereinafter, "the *Fee Motion*") requesting approval of $22,441.00 in attorney fees and $358.93 in costs.[1] The debtor opposes the *Fee Motion*, in part. She contends that the fees billed by Mr. Bradley's attorneys for post-confirmation services are unreasonable, and should not be awarded because Mr. Bradley was not the prevailing party on his earlier-filed *Motion for Relief From Stay*. After oral argument on June 10, 2014, the court took this matter under advisement. Having reviewed the *Fee Motion*, the debtor's opposition thereto, and considered the record in this case, I find that a portion of the fees requested should be disallowed as unreasonable. For the reasons stated below, the fees will be reduced by the sum of $2,400.00, and the messenger charges of $70.99 will be disallowed. The balance of the *Fee Motion* will be granted, resulting in a fee award of $20,041.00 and a cost allowance of $287.94, for a total of $20,328.94.

## Case Background

Anne Marie Wold filed a chapter 13 petition on October 15, 2012. Her *First Amended Plan* was confirmed on March 14, 2013, by a *Stipulated Order*, which contained the following provision:

---

[1] Docket No. 76.

> It shall be considered a material default in the plan if either of the following do not occur: (a) Within one year of February 27, 2013, the debtor shall either sell and close on the bare land parcel owned with her two sisters and generally described in the Schedule A as "5 acres of vacant land off Old Seward Highway in Anchorage . . ." and either distribute sufficient sale proceeds to pay Mr. Bradley's secured claim in full or (b) produce other funds to pay the Bradley claim in full by that anniversary date. Mr. Bradley's claim is POC #4 and may increase with costs and fees as provided for under 11 U.S.C. sec. 506(b), subject to court allowance.[2]

Mr. Bradley's Claim No. 4 is in the sum of $16,170.00. It is based on a short term *Deed of Trust Note* in the original amount of $6,000.00, dated October 31, 2011.[3] The note provided for interest at the rate of 10% per annum, with monthly payments of $600.00, though the balance was to be paid in a balloon payment due four months later on February 1, 2012. It was secured by a *Deed of Trust* recorded November 18, 2011, against real property located in south Anchorage, 3021 Porcupine Trail Road (the, "Property"), which Ms. Wold co-owns with her two non-debtor sisters. The debtor and one of her sisters live on the Property. Wold's *Statement of Financial Affairs* reflects that she filed her bankruptcy one day before a scheduled foreclosure sale of the Property.[4]

Both Claim No. 4 and Ms. Wold's *Schedules* indicate that the Property has a market value of $368,700.00.[5] There are no encumbrances against the Property except past due real

---

[2] *Stipulated Order Confirming Am. Chapter 13 Plan*, filed Mar. 14, 2013 (Docket No. 38), at 1-2.

[3] Proof of Claim No. 4 does not include an accounting, to show how the balance on the $6,000.00 note has increased to more than $16,000.00. The debtor has never disputed the proof of claim.

[4] *Statement of Financial Affairs*, filed Oct. 15, 2012 (Docket No. 1), at 26.

[5] *See Schedules A, D*, filed Oct. 15, 2012 (Docket No. 1) at 8, 14; Proof of Claim No. 4 at 1.

property taxes. Mr. Bradley valued Ms. Wold's one-third interest in the property at $123,933.33.[6] The parties agree that he is an oversecured creditor.

Seven months after Wold's *Plan* was confirmed, Bradley sought relief from stay for cause, under § 362(d)(1), for the debtor's failure to pay $4,812.52 in real property taxes on the Property.[7] Specifically, Mr. Bradley sought to impose a deadline by which the debtor would be required to bring the post-confirmation taxes current. The court denied this motion, without prejudice, because it was not properly noticed.[8] Bradley's counsel submitted a *Refiled Motion for Relief From Stay* on November 15, 2013.[9]

The Municipality of Anchorage filed a conditional non-opposition to the *Refiled Motion*. It noted that the outstanding real property taxes, including both pre and post-petition amounts, totaled $17,209.88.[10] The Municipality said it would not oppose the *Refiled Motion* so long as it was also granted concurrent relief from stay. Wold opposed the *Refiled Motion*, arguing that she could propose an amended plan that would cure the tax arrearage and adequately protect Bradley's claim.[11] The debtor did not file a modified plan with the opposition, or prior to the hearings on the *Refiled Motion*.

After two preliminary hearings, a final evidentiary hearing was held on the *Refiled Motion* on March 28, 2014. In the interim, the chapter 13 trustee filed a *Motion to Dismiss* on the grounds that the debtor had failed to sell the vacant land, or otherwise generate funds,

---

[6] *Mot. for Relief From Stay*, filed Oct. 18, 2013 (Docket No. 42) at 2.

[7] *Mot. for Relief From Stay* (Docket No. 42).

[8] *Order Denying Mot. for Relief From Stay, Without Prejudice* (Docket No. 45).

[9] Docket No. 46.

[10] *Muni. of Anchorage's Conditional Non-Opp'n to Mot. for Relief From Stay* (Docket No. 48).

[11] *Opp'n to Mot. for Relief From Stay* (Docket No. 50).

3

to pay Mr. Bradley's claim, by the deadline stated in her confirmed plan.[12]  This matter was also heard on March 28th.  A continued evidentiary hearing was conducted on April 9, 2014.  The debtor's ability to propose a feasible modified plan to address the defaults predominated the hearings.  The court denied both the *Refiled Motion* and the trustee's *Motion to Dismiss*, but conditioned the debtor's ability to remain in chapter 13 on the filing and noticing of a modified plan, and the timely payment of all modified plan payments and real property taxes.[13]  If the debtor failed to obtain an order confirming the modified plan by June 11, 2014, or defaulted on her obligations under such plan, the case would be dismissed.

After the debtor filed and noticed her modified plan, Mr. Bradley filed the *Fee Motion* based upon the language in his *Deed of Trust Note* that provides for the recovery of costs and attorney fees for any "suit or action" to collect on the note.[14]  He seeks $22,441.00 in attorney fees and $358.93 in costs.  Of the those amounts, $2,947.00 in fees, and $15.05 in costs, arose prior to confirmation.  The remainder, $19,494.00 in fees, and $343.88 in costs, were incurred post-confirmation.

Mr. Bradley also objected to confirmation of the modified plan because it did not provide for full payment of his attorneys fees and costs.  He noted that the *Stipulated Order* confirming the debtor's *Amended Plan* had recognized that the amount of his claim could be increased on account of his post-petition attorneys fees.  The parties realize, however, that the court must first resolve the attorney fee issue before those amounts can be incorporated into the debtor's modified plan.

---

[12] Docket No. 52.

[13] *Order Denying Mot. for Relief From Stay* (Docket No. 71); *Order Denying Mot. to Dismiss* (Docket No. 72).

[14] Claim No. 4, at 8.

4

The debtor opposes the *Fee Motion*. She does not object to the pre-confirmation fees or costs sought in the motion. Rather, she objects to the majority of the post-confirmation fees as unreasonable. Additionally, she argues that no post-confirmation fees should be awarded because Mr. Bradley was not the prevailing party on his *Refiled Motion for Relief From Stay*. At oral argument, the debtor's counsel suggested that a reduction of fees in an amount ranging between $2,500 - $3,000 was appropriate.

**Discussion**

Approval of post-petition, pre-confirmation attorney fees is governed by 11 U.S.C. § 506(b), which allows over-secured creditors to recover "any reasonable fees, costs, or charges provided for under the agreement ... under which such claim arose."[15] Mr. Bradley incurred $2,947.00 in fees and $15.05 in costs for pre-confirmation legal services. The debtor does not oppose the pre-confirmation charges, and these amounts will be allowed.

Mr. Bradley also seeks to recover a total of $19,494.00 in fees and $343.88 in expenses for work performed after the confirmation of the debtor's chapter 13 plan. The debtor does not object to $1,866.00 in post-confirmation fees and expenses incurred prior to December 2013. She does object to the last three billing statements attached to the motion: $1,182.00 incurred in December, 2013; $7,459.59 incurred in March, 2014; and $9,309.19 in April 2014. The three billing statements represent roughly 81% of all fees and costs sought. Ms. Wold contends that Mr. Bradley was not the prevailing party and may not

---

[15] 11 U.S.C. § 506(b). Section 506(b) permits an award of fees if "(1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1098 (9th Cir. 2009) (*citing In re Kord Enters. II*, 139 F.3d 684, 687 (9th Cir. 1998)). The creditor bears the burden of proving the reasonableness of his fees and costs. *In re Ransom*, 361 B.R. 895, 898 (Bankr. D. Mont. 2007).

5

collect attorney fees under Alaska R. Civ. P. 82. She also challenges the reasonableness of these fees.

Section 506(b) only governs a secured creditor's claim for fees until confirmation or the effective date of the plan.[16] Both parties acknowledge that the award of post-confirmation attorney fees in the Ninth Circuit is governed by *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*.[17] Faced with similar claims for pre and post-confirmation attorney fees from an over-secured creditor, the Ninth Circuit held that state law governed the creditor's claims for post-confirmation fees.[18] There, applicable Hawaiian law limited recovery of attorney fees to the prevailing party, regardless of any existing contractual provisions. The state law limitation did not restrict the creditor's right to recover post-petition, pre-confirmation fees under § 506(b).[19] As to post-confirmation fees, however, the creditor's entitlement to recovery hinged upon the state law requirement that it be a prevailing party, because § 506(b) no longer applied.

The debtor appears to ask the court to import Hawaii's prevailing party requirement to this case, to the exclusion of Mr. Bradley's contractual rights. However, Alaska law differs on this point. While Alaska Rule of Civil Procedure 82 provides for an award of *partial* fees and costs to a prevailing party, its provisions are applicable "[e]xcept as otherwise provided by law or agreed to by the parties."[20] In other words, Rule 82 does not preempt contractual fee and cost provisions. The Alaska Supreme Court, in *Rockstad v.*

---

[16] *Hoopai*, 581 F.3d at 1099.

[17] *Id*.

[18] *Id*. at 1096.

[19] *Id*. at 1099.

[20] Ak. R. Civ. P. 82(a).

6

*Erikson*, held that "where a contract between the parties allows for one party to recover attorney's fees in the event of litigation, 'the contract provision must prevail over any limitations otherwise imposed by Rule 82.'"[21] A creditor seeking to recover fees and costs under a contractual provision must show that these expenses were incurred as part of an action to collect on the note.[22] Further, the amounts sought must still be reasonable.[23]

Ms. Wold argues that the challenged post-confirmation fees were unnecessary because Mr. Bradley was oversecured at all times. In short, she argues that his claim was never in jeopardy, and, therefore, no legal services were required. She cites *In re Jemps, Inc.*,[24] in support of this proposition. Addressing a request for fees from an oversecured creditor, the court noted:

> The fact that a creditor is oversecured inherently provides protection of the claim. Thus, the creditor is only entitled to include services reasonably required to protect its interest in the loan. Overzealousness will not be compensated, even if the creditor approves of such action by its counsel.[25]

---

[21] *Rockstad v. Erikson*, 113 P.3d 1215, 1224 (Alaska 2005).

[22] *See generally O'Connell v. Will,* 263 P.3d 41, 46 (Alaska 2011) (Alaska Supreme Court held that a creditor could recover for post-judgment actions, including garnishment, under a contractual fee provision).

[23] It is generally accepted that such limitation is implied by law as a matter of public policy. 10 C.J.S. *Bills and Notes* § 363 (2014)("In an action on a note, attorney's fees may be recovered only to the extent that they are reasonable, even if the note specifies the amount of attorney's fees, although it has also been held that the amount specified by the note cannot be reviewed for reasonableness"); 1 ATTORNEYS' FEES § 9:36 (3d ed. 2014) ("Where an award of attorney's fees is authorized by contract, the fee awarded must be reasonable even in the absence of a provision requiring that the fee be reasonable."). The fee recovery provision in Mr. Bradley's *Note* is not specifically limited to "reasonable" attorney fees and costs. Claim No. 4, at 8. However, the *Deed of Trust* provides that, in the event of a legal proceeding that might significantly affect his interests in the property (such as a bankruptcy proceeding), Mr. Bradley "may do whatever is *reasonable or appropriate* to protect [his] interest in the Property and rights under this Security Instrument." *Id.* at 7 (emphasis added).

[24] 330 B.R. 258 (Bankr. D. Wyo. 2005).

[25] *Id*. at 262 (citations omitted).

Ms. Wold does not suggest that Mr. Bradley has been overzealous. Her only specific objection is the number of attorneys who worked on the case. A total of five attorneys billed various amounts of time for Mr. Bradley on this matter. Michael Jungreis was the lead attorney, and it appears that he supervised the other attorneys that worked on the case. Most of the time billed by these attorneys is limited to March and April of 2014, for services provided in support of the hearings on the *Refiled Motion for Relief from Stay* and the Trustee's *Motion to Dismiss*. The billing statements generally reflect that only one attorney worked on the case at any specific time, and there is little overlap between the work of any other attorney and Mr. Jungreis. While double billing is a well recognized basis for reduction of fee applications in bankruptcy, there is no evidence of such practice in this instance.

As to the reasonableness of Mr. Bradley's fees, in general, the challenged billings reflect work performed only after the debtor failed to pay her post-confirmation real property taxes and failed to make the lump sum payment required in her stipulated plan. The debtor had roughly a year to fund the lump sum payment, and had previously agreed that the failure to do so would constitute a material breach of her plan. Moreover, she failed to voluntarily address either breach, warranting action by the creditor. Still, the debtor did not move to modify her plan, but opposed Bradley's *Motion for Relief from Stay*, which was then combined with the trustee's *Motion to Dismiss*. The debtor's limited objection to the fees implicitly recognizes that the creditors' actions were reasonable by challenging the total amount billed rather than any specific fee itemization. Based upon the court's review of the fees, however, there are some concerns.

8

Mr. Bradley's counsel concedes that the $20.50 billed for research regarding a mechanic's lien on April 23, 2013, does not relate to this case, and must be removed. In a similar vein, Mr. Bradley seeks approval of $392.00 in fees for 1.6 hours billed on December 9 and 10, 2013, for preparing a motion to strike, and $49.00 for 0.2 hours billed on December 6, 2013, for drafting a response in connection with the initial *Motion for Relief From Stay*. Neither of these documents were filed in this case. Like the mechanic's lien charge, these items should be disallowed. It is not reasonable to charge the debtor for services that were never used. Taken together, these charges total roughly $500.00. Additionally, there are several itemizations for messenger expenses, for which no detail was given.[26] Such costs are typically not allowed.[27] They will not be approved here.

More significantly, the billing entries are generally "lumped together," meaning the timekeepers included multiple activities in a single entry without identifying the time spent on the component tasks. Notably, one of the associates broke out her time to reflect the individual tasks, but this was a small portion of the total time and entries. As explained in *In re Staggie*, lumping is:

> universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within

---

[26] A $45.00 messenger charge was billed on November 15, 2013. Four messenger charges were billed on April 14, 2014, three in the amount of $6.51 and one for $6.46. These charges total $70.99.

[27] *See Sousa v. Miguel (In re United States Trustee)*, 32 F.3d 1370, 1374 (9th Cir. 1994) (holding that trustees may not recover overhead expenses, including routine messenger services). *See also F/V Pacific Star v. Barstow (In re Eagle Fisheries)*, 3 A.B.R. 114, 121 (D. Alaska 1993) ("An award of messenger costs is clearly erroneous absent some factual support for incurring those fees."); *In re Pacific Exp., Inc.* 56 B.R. 859 (Bankr. E.D. Cal. 1985).

9

> a reasonable period of time because it is impossible to separate into components the services which have been lumped together.[28]

Fee lumping, by itself, can be a sufficient reason to find that a creditor has not met its burden of proving that its requested fees are reasonable.[29]

Fee lumping is particularly noticeable here with reference to the time billed drafting the *Fee Motion*. The billing statements reflect 11.8 hours were spent researching and drafting this motion, for a total of $3,000. All but .4 hours of this total was billed by an associate, at the rate of $250.00 per hour. The time appears to be excessive, particularly because no effort was made to break out the time spent by task, nor did the *Fee Motion* discuss the reasonableness of the time billed on any tasks. Much of the time billed appears to have been spent to educate the associate on fee applications in bankruptcy, in general.[30] Due to the lumping, the court is unable to give a meaningful review to fees billed on this project to determine their overall reasonableness.

Moreover, any evaluation as to the reasonableness of the fees requested must take into consideration the billing rate applied. While the debtor does not challenge the billing rate, an hourly fee of $250.00 for an associate suggests a familiarity of the bankruptcy process and a level of expertise that would reduce the overall amount of time spent on the task, thereby

---

[28] 255 B.R. 48, 55 (Bankr. D. Idaho 2000) (*quoting In re Automobile Warranty Corp.*, 138 B.R. 72, 76 (Bankr. D. Colo.1991)). The Alaska Bankruptcy Rules also prohibit fee lumping. *See* AK LBR 2016-1(c)(3)[C](ii). Although applicable to professionals employed on behalf of the bankruptcy estate, the billing requirements in Rule 2016-1could certainly serve as a guide to submitting any fee application in this court.

[29] *Staggie*, 255 B.R. at 55.

[30] There were other entries in the billings also reflecting "self-education" of the associates, including review of local bankruptcy rules and several hours related to what appears to be general research regarding relief from stay.

justifying the higher billing rate.[31] This does not appear to have been the case here, although, as noted above, the lumped billing makes it impossible to determine whether the fees charged to prepare the *Fee Motion* were reasonable. The court reaches the same conclusion for the time billed analyzing matters related to the *Refiled Motion*, and specifically the 3.4 and 6.4 hours billed on April 4 and 7, 2014, respectively. Taken together, I find that a reduction in fees is appropriate due to the fee lumping.[32]

**Conclusion**

There being no objection to the pre-confirmation fees and costs, the court will approve the $2,947.00 in fees and $15.05 in costs for that period. The court will reduce the post-confirmation fees by a total of $2,400.00. As explained above, this reduction reflects two broad components. First, the entries for which the debtor should not be charged: time related to a mechanic's lien, as well as the time billed for a motion to strike and an opposition that were never filed. I have rounded this reduction to $500. Second, the post-confirmation fees should be further reduced in light of the substantial amount of fee lumping, frustrating the

---

[31] *See In re Hart Creek Ranch, LLC,* 2012 WL 2871720 at *6 (Bankr. D. Idaho July 12, 2012)("But with a rate this high [$225.00 per hour] there is a concomitant and reasonable expectation that services will be efficiently and effectively provided.").

[32] Other fee itemizations also concerned the court. For example, Mr. Bradley seeks to charge the debtor $3,412.50 for time billed by Lisa Doehl. Ms. Doehl is of counsel to Davis Wright Tremaine, LLP, and her practice emphasizes real property matters, including leasing. She bills her time at $325.00. Ms. Doehl worked exclusively on the issue of the debtor's ability to lease a portion of her property to generate additional income to fund a modified plan. This was a central issue in the *Motion to Dismiss*. The court is uncertain, however, why it was necessary to have Ms. Doehl work on this matter. Additionally, the $3,412.50 she billed seems to be high in light of the product produced. I have factored these concerns into my conclusion to reduce the overall total fees allowed, although I am not deducting these fees, in particular. Again, I note that the debtor did not specifically challenge any portion of the fee billings. While Mr. Bradley bears the burden of showing that his fees were incurred to protect his interest in the *Note*, the court should not be put in the position of pulling the debtor's oar when challenging fees on the basis of reasonableness.

court's review as to reasonableness of the fees incurred. The lumped billings strongly suggest excess time has been included for the self-education of associates on fundamental bankruptcy issues which is inconsistent with the hourly rates charged. Given the general concerns that arise when a creditor is over-secured, the court is persuaded that the post-confirmation billings should be reduced by 10%.

Together, this results in a total reduction in post-confirmation fees of $2,400.00. The messenger costs of $70.99 will also be disallowed. The court will, therefore, enter a separate order approving Mr. Bradley's requested fees and costs in the following amounts:

|  | Fees | Costs |
|---|---|---|
| **Total Pre-Confirmation** | $ 2,947.00 | $ 15.05 |
| Post Confirmation | $ 19,494.00 | $ 343.88 |
| Less | $ (500.00) | $ (70.99) |
| Subtotal | $ 18,994.00 | $ 272.89 |
| Less 10% (rounded up) | $ (1,900.00) | |
| **Total Post-Confirmation** | $ 17,094.00 | $ 272.89 |
| **Total Pre and Post Confirmation:** | $ 20,041.00 | $ 287.94 |
| **Grand Total:** | $20,328.94 | |

DATED: August 4, 2014.

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve: C. Johansen, Esq.
M. Jungreis, Esq.
J. Hartz, Esq., Davis Wright Tremaine LLP,
   188 W. Northern Lights Blvd., #1100, Anchorage, AK 99503
L. Compton, Trustee
U. S. Trustee

12